**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

KIM E. AYVAZIAN
MASTER IN CHANCERY

CHANCERY COURTHOUSE
34 The Circle
GEORGETOWN, DELAWARE 19947
AND
NEW CASTLE COUNTY COURTHOUSE
500 NORTH KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19980-3734

April 20, 2015

Gary A. Bryde, Esquire
Gary A. Bryde, P.A.
Stone Mill Office Park
724 Yorklyn Road, Suite 100
Hockessin, DE 19707

Paul E. Weber
#162469
1181 Paddock Road
Smyrna, DE 19977

RE:  Paul E. Weber v. Charles J. Weber, Jr.
      C.A. No. 8213-MA

Dear Counsel and Mr. Weber:

Pending before me are Defendant Charles J. Weber, Jr.'s Motion for Summary Judgment and Plaintiff Paul E. Weber's Motions for Partial Summary Judgment, to Suppress Deposition, and to Amend and/or Bifurcate. For the reasons that follow, I recommend that all motions be denied, and this case be rescheduled for trial.

Charles[1] and Paul are the two surviving children of the late Margaret M. Weber (hereinafter "the decedent"), who died on December 23, 2009, a resident of Delaware. In her Last Will and Testament dated March 19, 2004 (the "2004 Will"), the decedent left her entire estate, including real property located at 14 Winnwood Road, in Newark, to her oldest son, Charles. The 2004 Will was admitted to probate by the Register of Wills in and for New Castle County on January 11, 2010. Paul subsequently filed a Statement of Claim at the Register of Wills for $528,000.00. This amount included three separate claims: (a) $163,800.00 for care services Paul had provided to decedent; (b) $85,000.00 for a promise of decedent to pay for Paul's legal costs; and (c) $280,000 for a promise of decedent to give the property at 14 Winnwood Road to Paul. Paul's Statement of Claim was rejected by Charles and, on March 16, 2011, Paul filed a complaint in this Court under 12 *Del. C.* § 2102,[2] seeking approval of his claims.[3] On

---

[1] I mean no disrespect by using the parties' first names, but do so for the sake of clarity.

[2] 12 *Del. C.* § 2102(c) provides:

Any claim not barred under subsections (a) and (b) of this section which has been rejected by an executor or administrator shall be barred forever unless an action or suit be commenced thereon within 3 months after the executor or administrator has notified the claimant of such rejection by writing delivered to the claimant in person or mailed to the claimant's last address known to the executor or administrator; provided, however, in the case of a claim which is not presently due or which is contingent or unliquidated, the executor or administrator may consent to an extension of the 3-month period, or to avoid injustice the Court of Chancery, on petition, may order an

November 9, 2012, Paul's action was dismissed without prejudice for lack of prosecution under Court of Chancery Rule 41(e).

On January 14, 2013, Paul filed his current complaint against Charles,[4] seeking specific performance of an oral contract to share their mother's estate. On February 17, 2014, I approved a case scheduling order that, among other things, set a discovery deadline of July 7, 2014, gave the parties until August 11, 2014 to file any motions, and scheduled a two-day trial to commence on January 13, 2015.[5] On August 11, 2014, Charles filed a motion for summary judgment.[6] After a briefing schedule was established, both parties subsequently requested, and were granted, extensions of time to file their briefs. On November 5, 2014, Paul not only filed his Answering Brief in opposition to Charles' Motion for Summary Judgment, but Paul also filed the other three motions that are now pending before me.

---

extension of the 3-month period, but in no event shall the extension run beyond the applicable statute of limitations.

[3] *Paul Weber v. Charles Weber, Executor of the Estate of Margaret M. Weber*, C.A. No. 6284-MA (Del. Ch.).

[4] *Michael Christopher Monds (minor); Paul E. Weber v. Charles J. Weber, Jr.,* C.A. No. 8213-MA (Del. Ch.). Michael is Paul's minor son, and Paul signed the complaint both on his own behalf and as Michael's "Trustee."

[5] Docket Item ("DI") 11. The progress of this case has been slowed by the fact that Paul is representing himself while in the custody of the Department of Correction at the James T. Vaughn Correctional Center.

[6] DI 37.

In his complaint, Paul alleges that their mother had wanted to renounce the 2004 Will and create a new will leaving Paul the family home and 50 percent of her remaining estate; however, she was prevented by Charles from doing so. After their mother's death, Paul confronted Charles about his actions, and Charles agreed to honor their mother's wishes and share her estate with Paul in exchange for Paul's agreement not to contest the 2004 Will.

In seeking summary judgment, Charles raises the following arguments: (1) Paul's claim is barred by the doctrines of *res judicata* and collateral estoppel; (2) the alleged contract between Paul and Charles was not supported by consideration; (3) Michael is not a proper party; (4) this action is actually a petition for review of the 2004 Will, which is time-barred by 12 *Del. C.* § 1309; and (5) Paul's complaint is barred by the doctrine of unclean hands because he breached the agreement when he filed his Statement of Claim in the Register of Wills Office and then filed suit in C.A. No. No. 6284-MA.[7] In his motion for partial summary judgment, Paul is seeking a judgment of $86,000.00, which he claims was the amount of money set aside in a legal defense fund for his benefit by his mother, and an order excluding this amount from the decedent's estate when calculating Paul's one-half share of the estate.

---

[7] Charles has not raised a Statute of Frauds defense to this action. *See* 6 *Del. C.* §§ 2714, 2715.

Under Court of Chancery Rule 56, summary judgment will be granted where the moving party demonstrates that there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law.[8] In performing this review, I must review all evidence in the light most favorable to the non-moving party.

The doctrine of *res judicata*, on which Charles primarily relies, is designed to prevent unnecessary and burdensome litigation about facts and theories that have been or should have been litigated previously. There are five elements that must be satisfied in order to establish *res judicata*,[9] but I need only cite the one element relevant in this case, i.e., the prior adjudication must be final.[10] The prior action, C.A. No. 6284-MA, was dismissed without prejudice. A dismissal without prejudice, while otherwise a final judgment, does not operate as a *res judicata* bar to preclude a subsequent suit on the same cause of action.[11]

Similar to the doctrine of *res judicata*, collateral estoppel is designed to prevent a party who litigated an issue in one court from later relitigating that same

---

[8] Court of Chancery Rule 56.
[9] *See Sussex County v. Sisk*, 2014 WL 3954929, at *3 (Del. Ch. Aug. 13, 2014) (Master's Report).
[10] *Id.* (citing *Bailey v. City of Wilmington*, 766 A.2d 477, 481 (Del. 2001)).
[11] *Braddock v. Zimmerman*, 906 A.2d 776, 784 (Del. 2006).

issue in another court.[12]  The elements of collateral estoppel are:  (1) the same issue is presented in both actions; (2) the issue was litigated and decided in the first action; and (3) the determination was essential to the prior judgment.[13]  Collateral estoppel does not apply here because no issues were ever litigated and decided in C.A. No. 6284-MA.  That action was simply dismissed by the Court for lack of prosecution.

Charles' contention that the contract was not supported by any consideration is based on the following excerpts from Paul's deposition.  In response to counsel's question, Paul agreed that the deal was to split everything equally, but that Charles was going to sell the house and buy a smaller house for Paul and, after subtracting the cost of that smaller house from Paul's half of the estate, pay the remainder of Paul's half in cash to Paul.[14]  When asked if that was the "whole agreement," Paul said, "Yes."[15]  Charles now argues that since Paul did not mention during his deposition what actions he would or would not take, the most Paul would be able to show is an oral promise unsupported by consideration, which would be unenforceable.

---

[12] *Tumulty v. Schreppler*, 2015 WL 1478191, at *11 (Del. Ch. March 30, 2015) (citing *Yucaipa Am. Alliance Fund I, LP v. SBDRE LLC*, 2014 WL 5509787, at *11 (Del. Ch. Oct. 31, 2014)).

[13] *Id.* (citing *Zutrau v. Jansing*, 2014 WL 3772859, at *41 (Del. Ch. July 31, 2014)).

[14] Defendant Charles J. Weber Jr's Opening Brief in Support of his Motion for Summary Judgment, at Ex. C. DI 40.

Paul argues that this exchange during the deposition is being taken out of context, and does not reflect an accurate description of the contract between the parties. Paul now moves to suppress the deposition, arguing that it does not conform to the Court's rules because he never had the opportunity to examine a transcript of his deposition or make any changes, and he never accepted the deposition. Charles responds by arguing that it was Paul's responsibility as a party to coordinate with the court reporter for his reading of the transcript and completion of an errata sheet. In addition, Charles argues that this motion is untimely because the deadline for filing all motions including discovery was August 11, 2014.

The verified complaint contains allegations that Charles coerced his mother into signing the 2004 Will and, after she voiced regret over her actions and renounced the will orally to family and friends, Charles then threatened and emotionally abused his mother to keep her under his control. Paragraph 13 of the complaint, which contains numerous hearsay statements, alleges that inquiries by law firms and an investigative agency uncovered the decedent's intention for Paul to inherit the family home and half of the remaining estate, Charles' emotional

---

[15] *Id.*

abuse of the decedent, and his hatred of Paul, among other "facts."[16] In Paragraph 14, Paul alleges:

> 14.  Paul confronted Charles with many of the aforementioned facts as set for [sic] in ¶ 13.  Charles acquiesced to the probability of a successful challenge of the 2004 will.  Charles then agreed to honor his Mother's wishes and share her estate with Paul and, by extension, Michael.  Paul, in turn, agreed not to contest the will.[17]

A promise to forbear from contesting the probate of a will can provide consideration sufficient to support a contract, assuming the promisee has a legal right to contest the will.[18]  The record before me consists of the pleadings and the two-page excerpt from Paul's deposition.  Since this case involves an alleged oral contract, the outcome will hinge upon the credibility of the witnesses.  Viewing the record in a light most favorable to the non-moving party, I find that a genuine issue of material fact exists whether an oral contract was created.

Charles argues that Michael is not a proper party because no guardian *ad litem* has been appointed for him, nor has any claim been alleged on his behalf.  In response, Paul argues that the record reveals that the decedent sought to revoke her will because of her wish to have her grandson inherit a portion of her estate, and the lack of an order for the appointment of a guardian *ad litem* for Michael can be remedied without prejudice to Charles.  Under Court of Chancery Rule 17, "the

---

[16] Complaint, at ¶ 13.  DI 1.
[17] *Id.* at ¶ 14.  DI 1.
[18] 3 Williston on Contracts § 7:46 (4th ed.); 17 C.J.S. Contracts § 145.

appearance of an infant … shall be by a general guardian or a trustee, if there be such and if the guardian or trustee be not otherwise interested in the cause, but otherwise by a guardian ad litem." Paul claims to be Michael's trustee. As alleged in paragraph 14 of the complaint,[19] Michael appears to be a third-party beneficiary of the alleged oral contract and, as such, would be an interested person who may be joined as a party plaintiff under Court of Chancery Rule 20.

Charles argues that he is entitled to summary judgment as a matter of law because this action is, in reality, a petition for review of a will that is time-barred under 12 *Del. C.* § 1309 because it should have been filed no later than six months after the 2004 Will was admitted to probate on January 11, 2010. However, even though this action is premised on Paul's apparent belief that the 2004 Will was invalid and did not reflect the testamentary wishes of the decedent, this action is not a will contest. It is a suit for specific performance of an oral contract. Therefore, the six-month limitation period of Section 1309 does not apply here.

Finally, Charles argues that, assuming there was an agreement between the parties, Paul breached that agreement by filing his prior action in this Court on March 16, 2011. According to Charles, C.A. No. 6284-MA was, in effect, a will contest since the estate residuary estate had been left to Charles in the 2004 Will. In response, Paul argues that he reasonably believed that Charles would breach the

_____

[19] Complaint, at ¶ 14. DI 1.

agreement by non-performance, and that he viewed Charles' failure to provide assurances that he (Charles) would abide by the agreement as an anticipatory breach of the contract.

Simply filing a statement of claims against a testamentary estate is not a challenge to the validity of the will. Every claim against an estate, if satisfied, has the effect of reducing the residuary estate. Moreover, I cannot decide at this stage of the proceeding whether Paul or Charles first breached the contract because the existence of the contract is still an issue in dispute.[20]

Paul's motions for partial summary judgment and to amend and/or bifurcate pertain to the alleged existence of a legal defense fund in the amount of $86,000.00. Both motions were filed 12 weeks after the deadline for filing motions had passed. Paul now argues that he only learned of the existence of this alleged fund when he received documents from the defendant during discovery. The record reveals that Charles' response to Paul's request for production of documents was served on July 11, 2014.[21] The deadline for filing motions was August 11th. Paul could have filed a motion to extend the deadline, but did not. All three of Paul's motions are untimely and should be denied.

---

[20] Generally, this Court does not apply the unclean hands doctrine in garden-variety breach of contract cases. *See Smithkline Beecham Pharmaceuticals Co. v. Merck & Co., Inc.* 766 A.2d 442, 449-450 (Del. 2000) (affirming Court of Chancery's refusal to invoke the doctrine of unclean hands where particular breach of contract was not "repugnant").

For the reasons stated above, I recommend that the Court deny Charles' motion for summary judgment and deny Paul's motions for partial summary judgment, to suppress deposition, and to amend and/or bifurcate. I am waiving a draft report and issuing this as a final report. The parties are referred to Rule 144 for the process of taking exception to a Master's Final Report. When this report becomes a final order of the Court, the parties shall contact my assistant who will schedule a pretrial conference and trial as soon as possible.

Sincerely,

*/s/ Kim E. Ayvazian*

Kim E. Ayvazian
Master in Chancery

KEA/kekz

---

[21] DI 31.